UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHEILA JEAN MORRIS,

                                Plaintiff,

        v.                                                              **DECISION AND ORDER**
                                                                        14-CV-689S

CAROLYN W. COLVIN, *Acting*
*Commissioner of Social Security*,

                                Defendant.


1.        Plaintiff Sheila Jean Morris challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that she has been disabled since June 1, 2008, due to back problems, high blood pressure, and foot issues.  Plaintiff contends that her impairments render her unable to work, and thus, she is entitled to disability benefits under the Act.

2.        Plaintiff filed an application for disability insurance benefits and supplemental security income on September 6, 2011, which was denied on December 5, 2011.  On December 13, 2011, Plaintiff requested a hearing before an ALJ.  On February 4, 2013, ALJ Donald T. McDougall conducted a hearing at which Plaintiff and a vocational expert appeared and testified.  Plaintiff was not represented by counsel.  At the time of the hearing, Plaintiff was 45 years old, with a ninth-grade education and limited work experience.  The ALJ considered the case *de novo*, and on March 13, 2013, issued a written decision denying Plaintiff's application for benefits.  The Appeals

Council denied Plaintiff's request for review on June 25, 2014.  Plaintiff filed the current action on August 22, 2014, challenging the Commissioner's final decision.[1]

3.        On January 9, 2015, Plaintiff filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket No. 9).  On April 9, 2015, the Commissioner filed a Motion for Judgment on the Pleadings.  (Docket No. 13).  Plaintiff filed a reply on April 30, 2015 (Docket No. 15), at which time this Court took the matter under advisement without oral argument.  For the following reasons, Plaintiff's motion is denied and Defendant's motion is granted.

4.        A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.        "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[1] The ALJ's March 13, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987)

7.      This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the

> [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.     In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since September 6, 2011, the alleged onset date (R. at 10);[2] (2) Plaintiff's carpal tunnel syndrome of the right wrist; obesity; hypertension, well-controlled; hypothyroidism; and degenerative disc disease of the cervical spine were "severe" impairments within the meaning of the Act (R. at 10); (3)  Plaintiff does not have an impairment or combination

---

[2] Citations to the underlying administrative record are designated as "R."

4

of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 10); (4) Plaintiff retained the residual functional capacity to perform light work, with certain limitations[3] (R. at 10); and (5) Plaintiff can perform jobs that exist in significant number in the national economy (R. at 13).  Thus, Plaintiff was not under a disability, as defined by the Act, at any time from September 6, 2011, through the date of the ALJ's decision. (R. at 14).

10.     Plaintiff contends that the ALJ (1) failed to develop the record; (2) failed to evaluate and explain his reasons for rejecting the opinions of Plaintiff's treating physicians; and (3) failed to properly evaluate Plaintiff's credibility.  Each argument will be discussed in turn.

11.     Plaintiff first argues that the ALJ failed to re-contact treating physician Ellis Gomez to develop the record and obtain medical records after April 2012.  Plaintiff maintains that the ALJ had reason to know that Plaintiff continued treating with Gomez between April 2012 and February 2013, the time of Plaintiff's hearing.  After a careful review of the record, this Court finds that the ALJ adequately developed the record and conducted a full and fair hearing to reach his decision that Plaintiff was not disabled.

12.     In light of the non-adversarial nature of the benefits proceedings, the Second Circuit has long recognized the proposition that, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel or . . . by a paralegal."  Rosa

---

[3] The ALJ found that "the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except that, in addition, she must be able to change positions briefly at least every ½ hour from sitting to standing or vice versa; and she must be able to move her feet if standing or use a cane if walking; the job must require no climbing, balancing, stooping, kneeling, crouching, or crawling; no ladders, ropes or scaffolds; and the job should be basically simple, routine, repetitive work."  (R. at 10).

v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).  The Act

provides that the Commissioner "shall make every reasonable effort to obtain from the

individual's treating physician (or other treating health care provider) all medical

evidence, including diagnostic tests, necessary in order to properly make [a disability

determination], prior to evaluating medical evidence obtained from any other source on

a consultative basis."  42 U.S.C. § 423(d)(5)(B).  Thus, SSA regulations provide that the

ALJ

> shall inquire fully into the matters at issue and shall receive
> in evidence the testimony of witnesses and any documents
> which are relevant and material to such matters. If the [ALJ]
> believes that there is relevant and material evidence
> available which has not been presented at the hearing, he
> may adjourn the hearing or, at any time, prior to the filing of
> the compensation order, reopen the hearing for the receipt of
> such evidence.

20 C.F.R. § 702.338.

13.     Additionally, "where a claimant is unrepresented by counsel, the ALJ has

a duty to probe scrupulously and conscientiously into and explore all of the relevant

facts, and to ensure that the record is adequate to support his decision."  Melville v.

Apfel, 198 F.3d 45, 51 (2d Cir. 1999) (internal citation omitted); see Mimms v. Heckler,

750 F.2d 180, 185 (2d Cir. 1984) (quoting Gold v. Secretary of HEW, 463 F.2d 38, 43

(2d Cir. 1972)) ("[A] duty devolves on the [ALJ] to scrupulously and conscientiously

probe into, inquire of, and explore all the relevant facts surrounding the alleged right or

privilege.").  See, e.g., Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (remanding

where ALJ relied on medical records containing significant gaps); Pratts v. Chater, 94

F.3d 34, 37-38 (2d Cir. 1996) (same).  Thus, when a claimant proceeds pro se, the

ALJ's duties are "heightened."  Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Atkinson

v. Barnhart, 87 F. App'x 766, 768 (2d Cir. 2004) (finding duty to develop record is "heightened when a claimant proceeds pro se").  The ALJ must "adequately protect a pro se claimant's rights by ensuring that all of the relevant facts are sufficiently developed and considered" and by "scrupulously and conscientiously prob[ing] into, inquir[ing] of, and explor[ing] for all the relevant facts." Cruz, 912 F.2d at 11 (internal quotations and citations omitted); accord Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508-09 (2d Cir. 2009).

14.    The duty to develop the record "includes assembling the claimant's complete medical history and recontacting the claimant's treating physician *if* the information received from the treating physician or other medical source is inadequate to determine whether the claimant is disabled." Batista v. Barnhart, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) (citing Rodriguez v. Barnhart, No. 02–CV–5782(FB), 2003 WL 22709204, at * 3 (E.D.N.Y. Nov. 7, 2003)) (emphasis added); see Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)) (quoting 20 C.F.R. § 404.1512(d)) (duty to develop record requires an ALJ "to make 'every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources.'").  But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted); see Brogan-Dawley v. Astrue, 484 F. App'x. 632, 634 (2d Cir. 2012) (explaining that the duty to recontact arises when records are "inadequate"; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999) (remanding where

ALJ relied on medical records containing significant gaps); Pratts v. Chater, 94 F.3d 34, 37-38 (2d Cir. 1996) (same).

15.     This Court finds no error in the ALJ's determination that he did not need to develop the record after February 2012, because he had before him an adequate medical history of Plaintiff, which included medical documentation through 2012.  This Court is cognizant that Plaintiff was not represented by counsel during the time the record was assembled, but the record reflects that the ALJ received adequate medical evidence to render a decision.

16.     In December 2011, the New York State Office of Temporary Disability Assistance requested Plaintiff's medical records through the date of the request.  (R. at 188-91).  On April 25, 2012, the ALJ mailed a letter to Gomez requesting "[a]ll medical records covering the period from October 14, 2011 to present."  (R. at 161).   In response to these requests, Gomez provided numerous progress notes outlining Plaintiff's treatment from May 2011 (R. at 174), July 19, 2011 (R. at 173), August 17, 2011 (R. at 172), and October 4, 2011 (R. at 171) and a functional capacity assessment, dated August 30, 2011.  (R. at 178-79).

17.     Additionally, Plaintiff presented the ALJ with supplemental records from Gomez at the hearing (R. at 204-13), which included an updated functional capacity assessment dated, June 26, 2012 (R. at 208-09), as well as progress notes from December 31, 2012 (R. at 210), and correspondence addressed to Gomez from other physicians (R. at 205-07).[4]  The updated functional capacity assessment dated June 26,

---

[4] Plaintiff argues that the ALJ overlooked these new documents as duplicates.  However, the ALJ distinguished the duplicates from these new documents.  At the hearing the ALJ stated, "[W]e already have the MRI from the cervical spine dated 12 - - 12/27/11.  We already have that.  That's Exhibit 6-F.  Dr. Gomez (phonetic), February 29th, '12 - - we don't have that.  So we'll need to make that part of an

2012 indicated that Gomez last examined Plaintiff on May 17, 2012.  (R. at 209).  Thus, this report includes Gomez's findings and results after examining Plaintiff on May 17, 2012.  The ALJ reviewed substantial medical evidence from Gomez that enabled him to make a sound disability determination.   Additionally, other medical professionals provided reports and medical evidence detailing their findings, which taken as a whole, provided the ALJ with ample medical evidence to render a decision.   No further development of the record was necessary.

18.      Moreover, Plaintiff has not identified any change in her condition between the December 31, 2012 progress note and the February 2013 hearing (R. at 210), nor did she testify at her hearing that any of her symptoms had exacerbated in that two-month period.   (R. at 18-40).  See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (explaining that remand is unnecessary where reconsideration, in light of the proper standards, would lead to the same conclusion previously reached); see also Havas v. Bowen, 804 F.2d 783, 786 (2d Cir. 1986) (declining to remand for consideration of a treating physician's opinion where there was no substantial evidence to refute the treating physician's conclusion that the claimant could not return to his prior employment).

---

exhibit.  It looks like it's about the most recent."   (R. at 25).  This Court is satisfied that the ALJ incorporated the additional documents provided by Plaintiff into the record and thoroughly reviewed them before rendering a decision.  The ALJ specifically references to these new documents in his decision by stating "claimant was seen at Dr. Gomez's office on December 31, 2012 . . . for a thyroid check and she needed a renewal script for her Lortab . . .  Blood pressure was 109/75; her weight was 240 pounds."  (R. at 12).

Plaintiff also implies that because the records were folded and difficult to read, the ALJ did not take these documents into consideration.  There is no evidence in the record to support a finding that the ALJ disregarded these documents based on their physical condition.

19.     Plaintiff had multiple opportunities to submit additional medical documentation and failed to do so.  In addition to the ALJ's pre-hearing request for medical records, the ALJ gave the Plaintiff an opportunity to submit additional reports after the hearing.  (R. at 12).  The ALJ specifically told Plaintiff that she should mail him any records that she believed he should see.  (R. at 22).  Plaintiff failed to provide any updated medical reports.  Plaintiff also had an opportunity to submit medical evidence before the Appeals Council hearing and again, failed to do so.  (R. at 6).

20.     Accordingly, this Court finds that the ALJ did not err by failing to recontact Dr. Gomez or to otherwise discharge his "heightened" duty to develop the record.  The ALJ was able to decide this case based upon the existing record, which considered as a whole, contained substantial evidence to support his finding that Plaintiff was not disabled.  Plaintiff has failed to identify any additional evidence or information that might have come to light to change the ALJ's decision.

21.     Plaintiff next contends that the ALJ failed to properly evaluate and explain his reasons for rejecting the opinions of treating physicians Gomez and Brewer.  She maintains that the ALJ failed to state the weight afforded these opinions and instead engaged in his own interpretation of the medical record.[5]

22.     The treating physician rule requires an ALJ to give controlling weight to a treating source's opinion on the issues of the nature and severity of a claimant's impairments if the opinion is well-supported by medically acceptable clinical and

_____

[5] Plaintiff also states that the ALJ failed to re-contact Gomez after he found the opinion to be inconsistent with the minimal evidence in the record.  The duty to re-contact arises when an ALJ lacks sufficient evidence in the record to evaluate opinion evidence or make a disability determination, not necessarily when a treating physician's opinion is inconsistent with the rest of the record.  Ayers v. Astrue, No. 08-CV-69A, 2009 WL 4571840 (W.D.N.Y. Dec. 7, 2009) (citing Rebull v. Massanari, 240 F. Supp. 2d 265, 272 (S.D.N.Y. 2002) ("The fact that the record does not support the treating physician's opinion does not mean that there are administrative gaps in the record triggering a duty to recontact.")).

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. <u>See</u> 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004).  If the ALJ does not give controlling weight to a treating source's opinion, he must apply several factors to determine what degree of weight should be assigned to the opinion, which include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree to which the medical source supported his opinion; (4) the degree of consistency between the opinion and the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence which may be brought to the attention of the ALJ.

<u>Morrillo v. Apfel</u>, 150 F. Supp. 2d 540, 545-46 (S.D.N.Y. 2001).  <u>See</u> 20 C.F.R. §§ 404.1527(c), 416.927(c).

23.     The Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion.  20 C.F.R. § 416.927(c)(2); <u>accord</u> <u>Schaal v. Apfel</u>, 134 F.3d 496, 503-04 (2d Cir. 1998).  However, as this Court has previously recognized, an ALJ "does not have to explicitly walk through these factors, so long as the Court can 'conclude that the ALJ applied the substance of the treating physician rule . . . and provide[d] 'good reasons' for the weight [the ALJ] gives to the treating source's opinion.'" <u>Hall v. Colvin</u>, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting <u>Halloran</u>, 362 F.3d at 32); <u>see</u> <u>Atwater v. Astrue</u>, 512 F. App'x 67, 70 (2d Cir. 2013) (explaining that ALJ need not undertake a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear").

24.     Furthermore, an "ALJ is not required to mention every piece of evidence considered in making a decision."  <u>Conlin ex rel. N.T.C.B. v. Colvin</u>, 111 F. Supp. 3d

376, 388 (W.D.N.Y. 2015).  When "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the court] do[es] not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).  Moreover, "[e]ven if the ALJ failed to explain the weight given to [a treating physician opinion], agency reconsideration would be unnecessary because 'application of the correct legal principles to the record could lead [only to the same] conclusion.'" Brogan-Dawley, 484 F. App'x at 634 (quoting Zabala, 595 F.3d at 409).

25.     The ALJ reviewed the opinions of both Gomez and Brewer, which indicated that Plaintiff was "very limited."  (R. at 12).  But the ALJ found that these reports were "not supported by the medical evidence of record" and outlined his reasoning.  (R. at 12).  The ALJ explained that Plaintiff's X-rays of the lumbar spine did not reveal any disc herniations (R. at 12 referring to R. at 193; see also R. at 182), her vertebral disc spaces were well maintained, and while she did have a degree of carpal tunnel syndrome in the right hand, neurologist Koenig found moderate carpal tunnel syndrome and recommended "conservative" treatment (R. at 12 referring to R. at 197).[6]

26.     The ALJ applied the substance of the treating physician rule and found Gomez's medical assessments inconsistent with the record and with Gomez's own opinions.  In August 2011, Gomez found Plaintiff to have no mental limitation and in June 2012, he found Plaintiff to have limitations in every area of mental functioning and

---

[6] Plaintiff argues that the ALJ's statement that "[c]laimant just does not seem that bad" indicates that the ALJ dismissed these opinions based on his own interpretation of the medical evidence.  (R. at 12).  In contrast to Plaintiff's cited cases that illustrate ALJs substituting their own opinions for those of medical providers, here, the ALJ did not go that far.  This Court finds no error with the ALJ stating his observations of Plaintiff's medical condition.

failed to report any mental health changes or diagnosis leading to such a change.  (R. at 208-09).   His June 2012 assessment also reported impaired "seeing, hearing, and speaking," but there were no other medical reports suggesting any impairment in these areas.  (R. at 209).  Furthermore, his treatment notes contained normal findings, yet his assessments indicated that Plaintiff had significant functional limitations.  (R. at 171-74; 210).   Gomez never recommended surgery or other intensive treatment options and Plaintiff testified she had never undergone surgery.  (R. at 31).   See Dumans v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) ("the [Commissioner] is entitled to rely not only on what the record says but also on what it does not say").

27.     Additionally, this Court notes that statements that a claimant is disabled are not entitled to controlling weight, even if made by a treating physician.  See 20 C.F.R. 416.927(d)(1); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("the ultimate finding of whether a claimant is disabled and cannot work [is] reserved [for] the Commissioner") (internal quotations omitted).   While both Gomez and Brewer found Plaintiff disabled, they did not provide adequate medical findings to support their conclusions.  (R. at 179, 199, 209).  Brewer stated that Plaintiff would be unable to work for three months and would be able to return to work by June 2011.  (R. at 199).   But an individual must be unable to work due to an impairment which lasts or can be expected to last for a continuous period of at least 12 months to be found disabled under the Act. See SSR 82-52.  Additionally, Gomez's progress notes suggest only mild impairments and few functional limitations, noting "nothing remarkable on physical exam."  (R. at 174).

28.     The ALJ's evaluation of the opinions of neurologist Arora who reviewed and examined Plaintiff's medical history provided adequate support for the ALJ's finding that Plaintiff not disabled.  Pursuant to 20 C.F.R. § 404.1527, an ALJ will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."  Arora found that Plaintiff had a normal gait, could walk on her heels and toes without difficulty, could get on and off of the examination table, was able to rise from a chair without difficulty, had full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally.  She had a full range of motion of the shoulders, elbows, forearms, and wrists and hips, knees, and ankles.  She listed the diagnoses as foot pain, question of plantar fasciitis, chronic lower back pain, hypertension, hypercholesterolemia, by history.  She had mild limitation for lifting, carrying, standing and walking long distances secondary to bilateral foot pain.  Arora opined that Plaintiff had a fair prognosis.  (R. at 11).  Thus, while the ALJ did not explicitly state that he weighed this opinion more than the opinion of Gomez or Brewer, this Court is satisfied that the ALJ's reasoning is adequate to support his decision.  Accordingly, this Court finds no error on this point.

29.     Lastly, Plaintiff argues that the ALJ erred in evaluating her testimony about the limiting effects of her impairments, which resulted in an adverse credibility finding that Plaintiff argues is not supported by substantial evidence.  This argument is unpersuasive.

30.     Credibility determinations are generally reserved to the Commissioner, not the reviewing court.  Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (holding that it is the job of the Commissioner and not the reviewing court

to make determinations on the credibility of witnesses); <u>Carrol v. Sec'y of Health and Human Svcs.</u>, 705 F.2d 638, 642 (2d Cir. 1982) (similar).   The ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.   <u>See Paries v. Colvin</u>, No. 5:11–CV–0478 (LEK/ATB) 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing <u>Snell</u>, 177 F.3d at 135).   The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

<u>Matejka v. Barnhart</u>, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005); <u>see</u> 20 C.F.R. §§ 404.1529, 416.929.[7]   In evaluating an individual's symptoms,

> adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, . . . adjudicators will

---

[7] The Social Security Administration recently updated its guidance on evaluating symptoms in disability claims. <u>See</u> SSR 16-3p, 2016 WL 1119029 (effective March 16, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character" and it also aims to "more closely follow our regulatory language regarding symptom evaluation." <u>Id.</u> at *1.   Accordingly, the Commissioner will consider "all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably expected to produce those symptoms. <u>Id.</u> at *1-2.   Moreover, the now rescinded SSR 96-7p and SSR 16-3p are not patently inconsistent as a comparison of the two reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms. <u>Compare</u> SSR 16-3p with SSR 96-7p. Therefore, it is appropriate to evaluate Plaintiff's credibility in light of the new guidance the Administration has provided.

> focus on whether the evidence establishes a medically
> determinable impairment that could reasonably be expected
> to produce the individual's symptoms and given the
> adjudicator's evaluation of the individual's symptoms,
> whether the intensity and persistence of the symptoms limit
> the individual's ability to perform work-related activities . . ."

SSR, 16-3P at *10.

31.     "At the first step in the credibility analysis, 'plaintiff's allegations need not

be substantiated by medical evidence, but simply consistent with it. The entire purpose

of section [ ] 404.1529 . . . is to provide a means for claimants to offer proof that is not

wholly demonstrable by medical evidence." Hogan v. Astrue, 491 F. Supp. 2d 347, 353

(W.D.N.Y. 2007) (emphasis in the original) (internal citations omitted); see also 20

C.F.R. § 404.1529(c) ("Because symptoms, such as pain, are subjective and difficult to

quantify, any symptom-related functional limitations and restrictions . . . , which can be

reasonably accepted as consistent with the objective medical evidence and other

evidence, will be taken into account.")  "Only allegations beyond what is substantiated

by medical evidence are subjected to a credibility analysis.  To require plaintiff to fully

substantiate [his] symptoms would be both an abrogation of the regulations and against

their stated purpose." Hogan, 491 F. Supp. 2d at 353 (citing Castillo v. Apfel, No. 98

Civ. 0792, 1999 WL 147748, at *7 (S.D.N.Y. Mar. 18, 1999).

32.     If the ALJ determines that the claimant is impaired, he then must evaluate

the intensity, persistence, and limiting effects of the claimant's symptoms.   If the

claimant's statements about his symptoms are not substantiated by objective medical

evidence, the ALJ must make a finding as to the claimant's credibility. See Genier v.

Astrue, 606 F.3d 46, 49 (E.D.N.Y. 2010); see also Poupore v. Astrue, 566 F.3d 303,

307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient

to establish disability because they were unsupported by objective medical evidence). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002), and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

33.     If a claimant's contentions are not supported by objective medical evidence, the ALJ must then consider the following factors to make a credibility determination regarding the plaintiff's credibility: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii); SSR 16-3p, at *7; Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010). See also Murphy v. Barnhart, No. 00 Civ. 9621 (JSR)(FM), 2003 WL 470572, at *10–11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c)). "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)

(quoting Gallardo v. Apfel, Civ. No. 96–9435 (JSR), 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)) (citations omitted).

34.    This Court's review of the ALJ's determination in light of the record as a whole reveals that the ALJ's credibility assessment was performed in accordance with this guidance. The ALJ conducted a thorough examination of the treatment records, treating source opinions, and other medical evidence in finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  (R. at 12).  This Court is satisfied that the ALJ applied the proper legal standards in his credibility analysis and there is substantial evidence to support the ALJ's determination that Plaintiff's statements concerning intensity, persistence, and limiting effects of the symptoms were not credible and did not "prevent the claimant from performing light work."  (R. at 12).

35.    Specifically, the ALJ discussed the requisite credibility factors by examining Plaintiff's daily activities, which included performing household duties, such as grocery shopping, cooking, cleaning, washing dishes, and doing laundry.  (R. at 32, 184).  The ALJ also acknowledged that Plaintiff has had "little medical treatment."  (R. at 12).  Plaintiff testified that she could walk around the block and stand for ten minutes (R. at 32-33), pain medication helped alleviate her symptoms "a little bit" (R. at 30), she had begun using a cane to walk less than a month before the hearing, and she had not undergone any surgical procedures (R. at 30, 31).  The ALJ explicitly asked Plaintiff why she could not work and Plaintiff responded that she had "no experience or nothing," rather than citing her physical condition.  (R. at 28).

36.     In this Court's view, the ALJ's credibility finding is sufficiently grounded in the evidence and specific enough to make clear to Plaintiff, to this Court, and to any subsequent reviewers the weight the ALJ gave to Plaintiff's statements about the limiting effects of her symptoms, and the reasons for that weight. As such, and upon review of the record as a whole, this Court finds that the ALJ's credibility assessment was performed in accordance with the requirements of the Social Security regulations and rulings, and the weight of controlling authority.  Accordingly, Plaintiff is not entitled to reversal or remand on this ground.

37.     Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination.  The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled and Plaintiff's aforementioned contentions are unavailing.  This Court will therefore grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion for the same relief.


IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:   May 27, 2016
         Buffalo, New York

<u>/s/William M. Skretny</u>
 WILLIAM M. SKRETNY
United States District Court Judge